# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

FILED

2015 AUG -5  AM 10: 27

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY ____

JOHN STEPHENS SCHAEFER, Individually and
as Administrator of the Estate of John Stanley
Schaefer, Deceased, and on Behalf of All Wrongful
Death Beneficiaries,

                  Plaintiff,

-vs-                                     Case No.  A-15-CA-163-SS

JONATHAN WHITTED and THE CITY OF
AUSTIN,

                  Defendants.

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendants Jonathan Whitted and the City of Austin's Rule 12(b)(6) Motion to Dismiss and Motion for Rule 7(a) Reply and Rule 12(e) More Definite Statement [#7], Plaintiff John Stephens Schaefer's Response thereto [#12], Defendants' Reply in support [#13], Plaintiff's First Amended Complaint [#16], Defendants' Rule 12(b)(6) Motion to Dismiss [#17], Plaintiff's Response thereto [#18], and Defendants' Reply in support [#19].  Having reviewed the pleadings, the briefing of the parties, the relevant law, and the case file as a whole, the Court now enters the following opinion and orders.

### Background

This § 1983 case arises from the death of John Stanley Schaefer, who was shot and killed by Defendant Officer Jonathan Whitted after a confrontation on Schaefer's property.  Based on allegations in Plaintiff's First Amended Complaint, the fatal events transpired as follows:

On the morning of March 1, 2013, Schaefer was attacked by a neighbor's pit bull while on his own property. First Am. Compl. [#16] ¶ 8.  On multiple occasions, including the day before, Schaefer had called 9-1-1 to report the same aggressive canine to authorities.  *Id.*  However, this day Schaeffer took matters into his own hands and shot the dog using a firearm he was licensed to carry by the State of Texas. *Id.*  Schaeffer immediately reported his actions to police.  *Id.* ¶ 9.  During the ensuing conversations with 9-1-1 dispatchers, Schaefer was asked to put away his weapon before police arrived to investigate.  *Id.* Schaeffer refused.  *Id.*

Officer Whitted was assigned to handle the call. *Id.* ¶ 10.   Officer Whitted asked the dispatcher to tell Schaefer to put away the weapon, but was advised Schaefer had rebuffed previous requests to stash the gun.  *Id.*  On the previous day, when police responded to his call about the errant pit bull, Schaefer had similarly been carrying a holstered weapon without incident. *Id.* ¶ 14.  Based on this encounter, Schaefer did not believe being armed could be construed by an officer as a threat to his or her safety.  *Id.*

When he arrived, Whitted entered Schaeffer's backyard to confirm the existence of the dead pit bull without announcing himself, requesting permission, or obtaining a warrant.  *Id.* ¶ 11. Whitted then called dispatch to ask Schaefer to "step out" of the house and re-positioned himself a few feet from its entrance. *Id.* ¶¶ 12, 15.  Before the dispatcher could reach Schaefer, Schaefer exited the front door with his gun "holstered."  *Id.* ¶ 15.  Without identifying himself, and without warning, Whitted immediately grabbed Schaeffer's left arm in an attempt to physically remove the gun from its holster.  *Id.*  In response, and in self defense, Schaeffer extended his left arm to repel Officer Whitted's advance while simultaneously securing his gun with his right hand and taking it "out of his waistband."  *Id.*  According to Officer Whitted's police report, Schaefer pivoted to face him

squarely and then directly pointed his gun so Officer Whitted was "looking down the barrel." *Id.* At this point, Whitted shot Schaeffer two times in the chest, killing him. *Id.*

There are conflicting stories in the pleadings concerning whether Schaefer actually pointed his gun at the officer and allegations forensic evidence contradicts Officer Whitted's story. *Id* ¶ 16. A Citizens Review Panel found Officer Whitted was responsible for creating a deadly situation resulting in Officer Whitted killing Schaefer due to his "inept disarming technique," failing to call for back-up, and not loudly identifying himself as police. *Id.* ¶ 16.

Plaintiff filed his original Complaint on February 24, 2015. *See* Compl. [#1]. On March 16, 2015, Defendants moved to dismiss Plaintiff's Second Amendment claim under Rule 12(b)(6), as well as for a Rule 7(a) Reply and Rule 12(e) More Definite Statement as to Plaintiff's Fourth Amendment claims. *See* Mot. Dismiss [#7]. The next month, on April 9, 2015, the Court ordered Plaintiff to file a Rule 7(a) Reply but otherwise reserved ruling on Defendants' Rule 12(b)(6) motion concerning the alleged Second Amendment violations. *See* Order of Apr. 9, 2015 [#14]. In response, Plaintiff filed his First Amended Complaint, the operative pleading for purposes of the instant motions, on April 19, 2015. *See* First Am. Compl. [#16].[1]

---

[1] The Court acknowledges filing an amended complaint supersedes and nullifies n previously filed complaint unless it specifically incorporates the earlier pleading. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). While the amended pleading generally operates to moot any pending motions to dismiss, an exception exists where a pending motion "attacks the original complaint for deficiencies that persist in the amended complaint." *People's Choice Home Loan, Inc. v. Mora*, No. 3:06-cv-1709-G, 2007 WL120006, at *12 (N.D. Tex. Jan. 18, 2007) (citations omitted). "If some of the defects raised in the original motion remain in the new pleading, the court may simply consider the motion as being addressed to the amended pleading." CHARLES A. WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1476 (3d ed.). Because the First Amended Complaint does not meaningfully deviate from the original complaint for purposes of assessing Plaintiff's Second Amendment claim—the object of Defendants' attack—the Court will apply the first Motion to Dismiss, and arguments contained therein, to Plaintiff's First Amended Complaint.

In the First Amended Complaint, Plaintiff asserts claims against Officer Whitted in his individual capacity for (1) a violation of Schaefer's Second Amendment rights, based on Officer Whitted's assault and attempt to confiscate his weapon; (2) unlawful search in violation of Schaefer's Fourth Amendment rights, based on Officer Whitted's warrantless entrance onto the property to investigate;[2] and (3) excessive force in violation of Schaefer's Fourth Amendment rights, based on Officer Whitted's physical attempt to disarm Schaeffer and the shooting. *Id.* ¶¶ 33, 34. As to the third claim, Plaintiff alleges Schaefer was "cooperative and non-threatening" and there was "no justifiable basis for attempting to disarm Mr. Schaefer without questioning him first and expressly asking to examine his gun, and no justifiable basis for shooting and killing Mr. Schaefer." *Id.* at ¶ 20. Moreover, Plaintiff alleges Schaefer was legally entitled to possess the weapon at home and legally entitled to use deadly force in self defense to resist Officer Whitted's assault. *Id.* ¶¶ 19, 21.

Plaintiff also brings *Monell* claims against the City of Austin for establishing policies and practices of (1) inadequately supervising and/or training its officers concerning the use of deadly; (2) failing to train officers concerning interactions with individuals legally entitled to possess and carry weapons; (3) failing to train officers about citizens' Second Amendment rights to possess weapons for self-defense in their homes; (4) using excessive deadly force prematurely; and (5) using excessively deadly force. *Id.* ¶ 37. Plaintiff also seeks to hold the City accountable for ratifying Officer Whitted's conduct. *Id.* ¶ 39. Plaintiff seeks compensatory damages and attorneys' fees. *Id.* ¶¶ 43, 44.

---

[2] Plaintiff concedes Officer Whitted's search lacks foundation to support any claim under the Fourth Amendment. Pl.'s Resp. [#18] at 5. Accordingly, the Court finds this claim has been abandoned and is DISMISSED WITH PREJUDICE.

Defendants move to dismiss Plaintiff's claims under Rule 12(b)(6) for failure to state a claim, and, as to the individual capacity claims against Officer Whitted, on the ground of qualified immunity.

## Analysis

### I.  Legal Standard—Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  A motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678.  Although a plaintiff's factual allegations need not establish that the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id.*  Determining plausibility is a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id.* at 679.

In deciding a motion to dismiss under Rule 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint.  *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993).  However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff

must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). In deciding a motion to dismiss, courts may consider the complaint, as well as other sources such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## II. Application

### A.  Claims against Officer Whitted in his Individual Capacity

Officer Whitted moves to dismiss Plaintiff's Second and Fourth Amendment claims against him on the basis of qualified immunity. The doctrine of qualified immunity shields government officials, such as law enforcement officers, performing discretionary functions in the course of their official duties from liability as well as from suit. *See Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994). "Qualified immunity protects public officials from suit unless their conduct violates a clearly established constitutional right." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (internal quotation marks omitted). The standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks omitted). A plaintiff bears the burden of negating a properly raised qualified immunity defense. *Id.*

The Supreme Court has articulated a two-part test for resolving government actors' claims of qualified immunity: a court must determine both (1) whether the public official's conduct violated an actual constitutional right, and (2) whether the public official's actions were "objectively unreasonable in light of clearly established law at the time of the conduct in question." *Id.* (internal quotation marks and citations omitted); *see also Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

-6-

Although the Supreme Court once required these questions be answered in order, and doing so is still advisable, courts have discretion to address either questions first. *Pearson*, 555 U.S. at 236.

In response to a qualified immunity defense, "plaintiffs suing governmental officials in their individual capacities must allege specific conduct giving rise to the constitutional violation." *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999). Unlike the notice pleading standard in Rule 8, the heightened pleading standard applicable in cases defended on qualified immunity grounds requires a plaintiff to plead "with factual detail and particularity, not mere conclusory allegations." *Id.*; *see also Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995).

### i. Second Amendment Claim

First, Plaintiff alleges Schaefer's Second Amendment right to possess a handgun at home for self-defense was violated when Officer Whitted assaulted and physically attempted to disarm him on his property without legal right or justification. First Am. Compl. [#16] ¶ 33. In response, Defendants argue Plaintiff fails to state a claim because the confiscation of firearms by police does not constitute an independent violation of the Second Amendment. *See Dickerson v. City of Denton*, 298 F. Supp. 2d 537, 541 (E.D. Tex. 2004). Defs.' Reply [#13] at 2.

In *McDonald v. City of Chicago*, the Supreme Court reiterated the fundamental Second Amendment right outlined in *Heller v. District of Columbia*, 544 U.S. 570 (2008), holding that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right to "possess a handgun in the home for the purpose of self-defense." 561 U.S. 742, 791 (2010); *see also Heller*, 544 U.S. at 592, 599 (holding the Second Amendment codified a pre-existing right of the individual to possess and carry weapons in case of confrontation and the "central component" of this right is self-defense). However, the Court noted the Second Amendment right "is not unlimited"

and citizens are not free "to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626.  Indeed, an individual's Second Amendment rights are subject to "limited, narrowly tailored specific exceptions or restrictions for particular cases." *United States v. Emerson*, 270 F.3d 203, 260–61 (5th Cir. 2001).

Plaintiff has presented no authority suggesting a mere attempt to seize an individual's weapon constitutes an independent violation of the Second Amendment, nor has he directed the Court to any Fifth Circuit precedent supporting a theory Officer Whitted's assault violates Schaefer's constitutional rights merely because it was perpetrated while Schaefer lawfully possessed a firearm on his own property.[3]  While the Court agrees with Plaintiff's characterization of the right enshrined in *Heller* and *McDonald*, it does not agree they stand for the creation of a cause of action against Officer Whitted under the Second Amendment in these circumstances.  Indeed, *Heller* and *McDonald* involved challenges to local ordinances effectively placing blanket bans on the possession of certain firearms.  Here, Plaintiff does not challenge a city ordinance uniformly depriving him of his right to lawfully brandish a weapon at his residence but instead challenges an individual city officer's unique conduct during a domestic disturbance investigation.  *Heller* and *McDonald* offer little guidance in this context where the circumstances pit an individual's Second Amendment rights

---

[3]   In his brief, Plaintiff accuses Officer Whitted of violating the Second Amendment "when he assaulted Mr. Schaefer *because* Mr. Schaefer was exercising his Second Amendment right to bear a gun in self-defense at his home."  Pl.'s Resp. [#12] at 6 (emphasis added).  While Plaintiff's language parallels First Amendment retaliation claims, *cf. Kinney v. Weaver*, 367 F.3d 337, 358 (5th Cir. 2004), he did not specifically raise or brief a claim based on this theory and the Court can find no cases in the Fifth Circuit recognizing a viable retaliation claim under the Second Amendment.  Moreover, the facts alleged do not raise the inference Officer Whitted's attempt to disarm Schaefer was motivated by a desire to punish Schaefer for exercising his constitutional rights.  Thus, to the extent Plaintiff intends to press a claim under § 1983 for retaliation under the Second Amendment, his claim still fails.

to carry a weapon for self-defense at his or her residence against an officer's rights to safely conduct the investigation of a crime at such an individual's home.  This delicate balance has been properly struck under the Fourth Amendment, which seeks to determine the objective reasonableness of a particular search or seizure.  *See, e.g.*, *Graham v. Connor*, 490 U.S. 386, 396 (1989).  Absent authority to do so, the Court declines to transform an excessive force claim into a novel Second Amendment claim merely because the challenged conduct has been recast as an attempt to seize Schaeffer's weapon while he was physically on his property.  Accordingly, Plaintiff fails to state a claim under the Second Amendment.

Assuming, *arguendo*, the First Amended Complaint did state a claim for relief under the Second Amendment, it would still be barred under the doctrine of qualified immunity because it cannot be shown Officer Whitted's conduct was a violation of clearly established law under the Second Amendment.  At a high level of generality, *Heller* and *McDonald* operate in tandem to protect an individual's right to possess a gun on his property for self-defense.  However, to surmount qualified immunity, Plaintiff has the burden of demonstrating the Second Amendment right Officer Whitted is alleged to have violated is "clearly established" in the more "particularized sense," such that "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  "This inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general proposition."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  As the Supreme Court acknowledged, *Heller*'s broad proposition did not fully establish the boundaries of the Second Amendment right and a considerable amount of uncertainty remains.  *Heller*, 554 U.S. at 635 ("But since this case represents the Court's first in-depth examination of the Second Amendment, one should not expect

it to clarify the entire field, any more than *Reynolds v. United States*, 98 U.S. 145 (1879), our first in-depth Free Exercise Clause case, left that area in a state of utter uncertainty."). Plaintiff's failure to present any cases where a police officer is liable under the Second Amendment for attempting to dispossess an individual of his or her weapon during an investigation is likewise fatal to his claim under this prong of the qualified immunity analysis. Accordingly, as alleged, the Court finds there is no clearly established rules putting Officer Whitted on notice his actions even implicated the Second Amendment.

### ii. Fourth Amendment Excessive Force Claim

It is clearly established individuals have the right under the Fourth Amendment to be free from excessive force during such a seizure. *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012) (citation omitted). To establish a claim of excessive force, a plaintiff must demonstrate: "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005). Whether the force used was excessive or unreasonable depends on the "totality of the circumstances." *Tennessee v. Garner*, 471 U.S. 1, 8–9 (5th Cir. 2010). In making this determination, the Court has been directed to consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Poole*, 691 F.3d at 627–28 (quoting *Graham*, 490 U.S. at 396).

Whether an officer's conduct is "reasonable" is an objective inquiry and must be judged from the perspective of a reasonable officer "in light of the facts and circumstances confronting them, rather than the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "[I]n gauging the

objective reasonableness of the force used by a law enforcement officer, [courts] must balance the amount of force used against the need for that force." *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996). The Court must take into account "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving . . . ." *Graham*, 490 U.S. at 396. When an officer uses deadly force, the 'objective reasonableness' balancing test is constrained." *Flores v. City of Palacios*, 381 F.3d 391, 398 (5th Cir. 2004) (quoting *Garner*, 471 U.S. at 8–9). The "[u]se of deadly force is not unreasonable when an officer would have reason to believe the suspect poses a threat of serious harm to the officer or others." *Mace v. City of Palestine*, 333 F.3d 621, 624 (5th Cir. 2003); *see also Garner*, 471 U.S. at 11–12.

Plaintiff argues Officer Whitted violated Schaefer's Fourth Amendment rights first by "recklessly grabbing his arm and attempting to disarm him . . . without any legal right or justification" and next when he "shot and killed Schaefer when he posed no danger to anyone and when he was legally entitled to act in self defense." First Am. Compl. [#16] ¶ 31. To the extent Plaintiff argues the initial "assault" alone supports a Fourth Amendment violation independent of the shooting, this argument must fail. To state an excessive force claim, Plaintiff must allege the existence of "more than a de minimis injury." *See Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). Because Schaefer did not sustain any injury when Officer Whitted grabbed his left arm, First Am. Compl. [#16] ¶ 15, Plaintiff's claim under this theory is due to be dismissed.

However, to the extent Plaintiff argues Officer Whitted's conduct—including the initial assault—violated the Fourth Amendment by recklessly creating the circumstances ultimately leading to the shooting, this case presents complicated issues regarding the scope of the excessive force inquiry. According to Plaintiff, if Officer Whitted had properly announced himself, and if he had

not unlawfully assaulted Schaefer, then Schaefer would not have acted in self-defense by reaching

for his weapon, as he contends had the right to do under Texas law. *See* TEX. PENAL CODE ANN. §§

9.31(c); 9.32 (West 2007). Indeed, Schaefer had been carrying a holstered weapon when officers

responded to a similar call the day before and Schaefer did not threaten the officer. Accordingly,

even if the Court finds Officer Whitted was ultimately justified in shooting Schaefer, Plaintiff argues

he is nonetheless constitutionally liable because he recklessly caused Schaefer to reach for his gun

and thus his gross abuse of police power created the threat he now argues justified the shooting.

In the Fifth Circuit, police officers are not liable under the Fourth Amendment for negligently

creating circumstances leading to an otherwise justified shooting. This rule was first announced in

*Young v. City of Killeen*, 775 F.2d 1349 (5th Cir. 1985). In *Young*, an officer observed a drug

transaction between two individuals in Young's car. *Id.* at 1351. The officer approached in his

patrol car with lights flashing, and, when Young tried to drive away, maneuvered his car to blocked

Young's path. *Id.* The officer then left his car and ordered Young to exit his. *Id.* When Young

reached down to the seat or floorboard of his car, the officer shot and killed Young because he

believed Young was reaching for a weapon. *Id.* The plaintiff brought an excessive force claim based

on the shooting. In rejecting the plaintiff's claim, the court explained:

> [t]he constitutional right to be free from unreasonable seizure has never been equated
> by the Court with the right to be free from a negligently executed stop or arrest.
> There is no question about the fundamental interest in a person's life, but it does not
> follow that a negligent taking of life is a constitutional deprivation.

*Id.* at 1353. Ultimately, even though the officer had violated six police procedures, he could not be

constitutionally liable because "the only fault found against [the officer] was his negligence in

creating a situation" causing him to mistakenly believe an individual posed a threat of serious harm. *Id.*

In *Fraire v. City of Arlington*, the Fifth Circuit rejected an excessive force claim where a plain-clothes officer cornered a suspect's vehicle in a cul-de-sac and shot and killed the driver as he tried to run over the detective in an attempt to flee. 957 F.2d 1268, 1270–73 (5th Cir. 1992). Relying on the holding in *Young*, the Court rejected "[t]he implication that [the officer] thereby manufactured the circumstances that gave rise to the fatal shooting" because he "failed to follow established police procedures in displaying his badge and identifying himself while in plain clothes." *Id.* at 1275. The Court characterized *Young* as standing for the proposition that "regardless of what had transpired up until the shooting itself, Young's movements gave the officer a reason to believe, at that moment, that there was a threat of physical harm" so as to justify the use of force. *Id.* at 1276. In other words, "even a negligent departure from established police procedure does not necessarily signal violation of constitutional protections." *Id.*

As the above summarized cases make clear, it is axiomatic § 1983 provides redress only for gross or reckless abuses of power, but not for simple negligence. *See, e.g.*, *Coon v. Ledbetter*, 780 F.2d 1158, 1163 (5th Cir. 1986). Accordingly, *Young* and *Fraire* make clear Plaintiff cannot succeed on the claim Officer Whitted's negligence in failing to identify himself, failing to command Schaefer to surrender the weapon, or failing to call for backup when he knew Schaefer had a gun and this negligence was the proximate cause of Schaefer's death. *See Id.* (rejecting jury charge allowing "the jury to impose liability if the jurors believed that the officers were guilty of ordinary negligence in not identifying themselves by a display of flashing lights or otherwise and that this negligence was a proximate cause of the resulting injury"). However, *Young* and *Fraire* are silent where, as here,

-13-

Plaintiff alleges Officer Whitted's unprovoked assault was not a negligent failure to follow police protocol, but instead independently qualifies as the precise type of objectively unreasonable conduct the Fourth Amendment is designed to protect against. Further, *Young* and *Fraire* did not involve suspects who were induced or forced by the officer to engage in the act that ultimately justified the shooting nor was the act arguably justifiable self-defense. *See Carnaby v. City of Houston*, No. 4:08-cv-1366, 2009 WL 7806964, at *3 (S.D. Tex. Oct. 28, 2009); *see also Gilmere v. City of Atlanta*, 774 F.2d 1495, 1501–02 (11th Cir. 1985), *abrogated on other grounds by Nolin v. Isbell*, 207 F.3d 1253, 1255–57 (11th Cir. 2000). Here, Schaefer's motion to secure his weapon—the only action serving to justify Office Whitted's shooting—arose as a direct and perhaps justified response to an allegedly gross abuse of police power. Assuming the facts alleged are true, Officer Whitted cannot now hide behind Schaefer's reasonable response to an unconstitutional assault in order to justify the killing, especially where he was subjectively aware his actions would very likely evoke Schaefer's response. Accordingly, to the extent Officer Whitted "manufactured" his own legitimate fear of serious bodily injury by recklessly and unjustifiably physically attacking Schaefer, the Court finds this case distinguishable from *Young* and its progeny.

Indeed, facts alleged by Plaintiff substantiate allegations Officer Whitted used recklessly excessive force in violation of Schaefer's Fourth Amendment rights when he resorted to physical violence before first verbally ordering Schaefer to put down his gun and this conduct forced or induced Schaefer to instinctively move to secure his weapon. The facts and circumstances confronting Officer Whitted did not suggest there was any need to use force before first commanding Schaefer to surrender his weapon. Schaefer was on his own property, had reported his own conduct

-14-

to police,[4] and was lawfully in possession of the firearm holstered on his hip.  There are no allegations Schaefer was uncooperative or belligerent upon exiting the home, made any attempt to assault the investigating officer, nor otherwise took any action Office Whitted could be perceived as threatening.  Moreover, armed with the knowledge Schaefer would be carrying a holstered weapon he was licensed to possess, Officer Whitted nonetheless entered Schaefer's property alone without announcing himself to investigate the scene and positioned himself a few feet from the front door, anticipating Schaefer's arrival. Although each act may only amount to a mere negligent violation of police procedures, these decisions are inconsistent with a subjective belief Schaefer posed an immediate, credible threat of harm.  There was no need to forcefully attempt to disarm Schaefer absent any verbal warning and it is plausible doing so was more than mere negligence. Consequently, even if Officer Whitted was ultimately justified in believing his life was in jeopardy at the time he fired the fatal shots, he can still be held liable for recklessly abusing his power to generate the threat he seeks to use as the basis for his shooting.

The Court does not dispute Defendant's argument that an officer is generally entitled to use some quantum of force to dispossess an individual of his lawfully carried weapon in order to conduct an investigation without threats to his safety.  *See Thomas v. Murray*, 107 F. Supp. 2d 748, 758 (N.D. Tex. 2000) (explaining "the right to make an investigatory stop necessarily carries with it the right to use some degree of force" and "a police officer should be able to conduct an investigation

---

[4]  The crimes Schaefer *could* have been suspected of committing—discharging a firearm within the Austin city limits and killing a non-livestock animal without the owner's consent—are not sufficiently violent to justify any concern he would shoot Officer Whitted.  This is especially the case where Schaefer voluntarily called the authorities to report his action.  Although the crimes involved the discharge of firearms, the bullets were fired in self-defense and were not directed at another individual.

without any threats or potential threats to his safety or that of others.") In *Thomas v. Murray*, the Court rejected an excessive force claim based on an officer's physical disarming of an individual under investigation, because "given the facts and circumstances of the case, a reasonable officer could have believed that it was necessary to disarm [the plaintiff] for safety reasons while he conducted his investigation, *even though the pistol remained in [plaintiff's] hip pocket at all times.*" *Id.* at 758.

While the Court acknowledges parallels between the facts alleged in this case and those on the summary judgment record in *Thomas*, there are critical differences fatal to Defendant's argument. Most importantly, even if the investigating officer in *Thomas* did feel threatened, he repeatedly asked for the plaintiff's gun before resorting to physical force, and when the plaintiff refused to surrender the firearm, "told the Plaintiff again, in a louder more demanding voice, to give him the gun." *Id.* at 752–53. Here, Officer Whitted did not announce himself as a police officer[5] nor did he request or command Schaefer to surrender the weapon. Officer Whitted knew Schaefer refused the dispatcher's requests to put away the weapon, and he knew Schaefer would be carrying a weapon. He chose to make personal contact with him anyway. Again, this action belies any argument Officer Whitted was subjectively concerned Schaefer posed an immediate threat to his safety. By confronting Schaefer on the patio knowing he would be carrying a weapon, and by immediately attacking Schaefer without first announcing himself as police, it is plausible Officer Whitted was

---

[5] While the First Amended Complaint alleges Whitted was an "unidentified man," leading to the inference Schaefer could have believed Whitted was the owner of the dead pit bull, it does not allege whether Whitted was wearing an Austin Police Department uniform nor whether Whitted's patrol car was within Schaefer's view when he exited the house, thus negating this inference. The Court refuses to rely on its "judicial experience and common sense" to assume Whitted was wearing a uniform, as urged by the Defendant, and will await resolution of this fact on the record at summary judgment.

aware of a the high likelihood Schaefer would react by extending his arm to protect himself or reaching to secure his weapon. Therefore, accepting the facts alleged as true, physically assaulting Schaefer before commanding him to drop the gun was a reckless abuse of police power directly inducing the action now used to justify the shooting. Under these circumstances, the Court finds Plaintiff states a Fourth Amendment claim against Whitted based on the assault, even where the shots themselves may be justified.

Alternatively, even if the Court were to find Officer Whitted's initial assault was ordinary negligence or if it were barred by the rule announced in *Young*, Plaintiff still states a plausible claim it was excessive to the need and objectively unreasonable. Although Defendants claim dismissal is proper because Schaefer "took [the gun] out of his waistband," the First Amended Complaint is silent as to how it was removed and in what direction the gun was pointed. First Am. Compl. [#16] ¶ 15. Again, accepting the accuracy of Plaintiff's allegations, Schaeffer did not pivot to squarely face Officer Whitted in order to point the gun directly at the officer. Instead, Schaefer turned away from Officer Whitted and extended his left arm to protect himself from the officer. Immediately shooting and killing Schaeffer while he was in the process of recoiling from Officer Whitted's attack is plausibly grossly disproportionate to the need and objectively unreasonable. Consequently, even assuming Officer Whitted's prior conduct was negligent or reckless, and this conduct "manufactured" the final shots, the First Amended Complaint still sufficiently alleges a deprivation of Schaefer's constitutional rights.

Under the second prong of qualified immunity, the Court must next decide whether "the law was sufficiently clear that a reasonable officer would have known that his conduct violated the

constitution." *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009).[6] The core purpose of this prong is to protect officers where the law has not given "fair warning" their conduct is unlawful. *Ramirez v. Martinez*, 716 F.3d 369, 379 (5th Cir. 2013) (citing *Kinney*, 367 F.3d at 350).   For the reasons this case is distinguishable from *Thomas*, so too is the law clear a reasonable officer would know assaulting a lawfully armed citizen without first announcing himself, giving a warning, or otherwise commanding the individual to disarm would rise to the level of a constitutional violation. *See Hope v. Pelzer*, 536 U.S. 730, 740 (2002) (holding the law can be clearly established "so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights").

Further, it is clearly established the use of "deadly force violates the Fourth Amendment *unless* 'the officer has probably cause to believe the suspect poses a threat of serious physical harm either to the officer or to others." *Bazan*, 246 F.3d at 488 (quoting *Garner*, 471 U.S. at 11).  This threat must be "immediate." *Garner*, 471 U.S. at 11.  The circumstances of the unprovoked assault and shooting described in the Amended Complaint are sufficiently grievous to compel the Court to deny qualified immunity at the motion to dismiss stage because a reasonable officer would have known the degree of force used was unconstitutionally excessive.  Drawing all reasonable inferences in Plaintiff's favor, it is facially plausible the threat of physical harm was not immediate because Schaefer did not actually draw the weapon and point it in Officer Whitted's direction.  If Plaintiff's allegations are true, and Schaefer merely turned away, extended his left harm to repel Officer Whitted, and used his right harm to secure his weapon, a jury might find it would have been apparent

---

[6] The parties do not contest Officer Whitted was acting in the course and scope of his employment or was engaged in discretionary actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

to a reasonable officer in Officer Whitted's position immediately shooting Schaefer twice in the chest was a violation of Schaefer's Fourth Amendment rights. Accordingly, Defendants' motion is DENIED as to Plaintiff's excessive force claims.

There is a fine line between simple negligence and the deprivation of a constitutional right. *See Coon*, 780 F.2d at 1164 (referring to this distinction as "relatively abstract and sometimes uncertain"). Whether Officer Whitted's was guilty of ordinary negligence that proximately caused an otherwise justifiable use of force, which would not give rise to constitutional liability, or whether Officer Whitted's use of force on Schaefer's property was reckless and objectively unreasonable, which would, is best left to be decided on a developed record at summary judgment. Considering the competing accounts of what occurred, and because excessive force cases such as this are exceedingly fact intensive, the issue of whether Whitted violated Schaefer's Fourth Amendment rights is not appropriate for adjudication on a motion to dismiss.

## B. Monell Claims against the City of Austin

Plaintiff alleges the City is liable under § 1983 because (1) it maintained unconstitutional policies or practices, and (2) it failed to adequately supervise or train its officers. Plaintiff also alleges the City's Chief of Police, Art Acevedo, ratified Officer Whitted's conduct. The Court will address each in turn.

### i. Legal Standard

While a municipality is considered a "person" for the purposes of § 1983, they cannot be held vicarious liable for the constitutional violations of their employees. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A city may only be held liable if such violations result directly from a city custom or policy. *See, e.g., City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).

The plaintiff must show such an official policy is "so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation. *Thompkins v. Belt*, 838 F.2d 298, 303–04 (5th Cir. 1987).

Municipal liability under § 1983 requires proof of three elements: (1) a policymaker, (2) a policy or custom, and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Pietrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S.at 694. A city may be sued on this basis if it is alleged to officially adopt and promulgate a policy statement, ordinance, or decision resulting in the constitutional violation. *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166 (5th Cir. 2010) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988)). "Alternatively, official policy is a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted or promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Brown v. Bryan Cnty.*, 219 F.3d 450, 457 (5th Cir. 2000) (citation omitted).

The City may be liable for failure to train or supervise its police officers if "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that he policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 389. For an official to act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Connor v. Travis Cnty.*, 209 F.3d 794, 796 (5th Cir. 2000) (quoting *Farmar v. Brennan*, 511 U.S. 825, 837 (1994)). Accordingly, failure to train or supervise claims generally require the plaintiff to plead more than one instance of similar constitutional torts,

suggesting municipality was on notice of a pattern of similar violations but chose not to act.  *See Davis v. City of N. Richland Hills*, 406 F.3d 375, 383 n.34 (5th Cir. 2004).  Under the "single incident exception," a plaintiff may survive a motion to dismiss claims for failure to train or supervise by alleging "the highly predictable consequence of not training or supervising the officer was that the officer would violate the constitution and that this failure to train or provide supervision was the moving force that had a specific causal connection to the constitutional injury." *Id.* (citations omitted).

Defendants attack the factual sufficiency of Plaintiff's municipal liability pleadings, arguing they amount to a "bare-bones" recitation of elements of a *Monell* claim. Defs.' Mot. [#17] at 9.  In *Leatherman*, 507 U.S. at 168, the Supreme Court  rejected the Fifth Circuit's application of the heightened pleading standard to § 1983 claims against municipalities, reaffirming "all the Rules require is a 'short and plaint statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.*  (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  *Leatherman* predates the "plausibility" requirement of *Twombly*, 550 U.S. 544 (2007), and *Iqbal*, 556 U.S. 662 (2009).  It remains unresolved how and to what extent the directives of *Twombly* and *Iqbal* alter the *Leatherman* pleading standards for municipal liability claims. However, the Court agrees, for now, the standards can be reconciled in the manner articulated in *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 842–45 (S.D. Tex. 2011).  To state a claim, the complaint must contain "more than boilerplate allegations" but need not contain "specific facts that prove the existence of a policy." *Id.* at 844.

The *Thomas* court provided examples of the type of facts that would provide fair notice to the defendant municipality and thus satisfy the applicable pleading standards.  These examples

include past incidents of misconduct to others, multiple harms occurring to the plaintiff himself, misconduct occurring in the open, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy or training inadequacy. *Id.* "[F]ederal Courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later." *Id.* (citing *Leatherman*, 507 U.S. at 168–69).

### ii. Application

Plaintiff first alleges the City and its policymakers promulgate policies or practices of (1) using excessive deadly force prematurely and/or (2) using excessively deadly force. He alleges "over the past decade" the City has "violated the liberties protected by the Bill of Rights by arresting citizens video recording police, attacking demonstrations with horses, obstructing freedom of press, and disrupting lawful demonstrations." First Am. Compl. [#16] ¶ 26. He also alleges City police officers "routinely use excessive and deadly force" and have "killed or seriously injured many citizens doing nothing wrong during the past few years." *Id.* ¶¶ 26, 27. He alleges the policies or practices were actually or constructively known by the City and the policies or practices caused Schaefer's death. *Id.* ¶ 41.

The Court finds Plaintiff's allegations concerning the City's policy or custom are inadequate to state a claim for relief. Plaintiff's allegations are simply a reformulation of the elements of a claim for municipal liability based on an unconstitutional custom or practice devoid of any factual enhancement or support. *See Iqbal*, 556 U.S. at 678 (citations omitted). To survive a motion to dismiss, Plaintiff must allege the existence of a sufficient number of similar prior violations rather than isolated instances. *See City of N. Richland Hills*, 406 F.3d at 383 ("Prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in

question."). Without specifically identifying policies promulgated by City policymakers, and without providing specific examples of persistent and widespread abuse, Plaintiff fails to provide the City with fair notice of the grounds for its claim. *See Twombly*, 550 U.S. at 545 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusion."). These allegations are no more than "generic, boilerplate recitations of the elements of claims against a municipality for an unconstitutional custom or practice" and thus do not raise a plausible claim City police adopted unconstitutional customs or practices. *See City of Galveston*, 800 F. Supp. 2d at 845. Accordingly, Defendants' Motion to Dismiss is GRANTED WITHOUT PREJUDICE as to these claims.

In contrast, Plaintiff's failure to train or supervise claims pass muster. Plaintiff alleges the City failed adequately train or supervisors its officers concerning: (a) the use of deadly force; (b) interactions with individuals legally entitled to possess and carry weapons; and (c) citizens' Second Amendment right to possess weapons for self-defense in their homes. First Am. Compl. [#16] ¶ 26, 27. To substantiate these claims, Plaintiff alleges the City does not "properly train officers on how to interact with [lawfully armed citizens], or educate them on the laws concerning the lawful possession of weapons and the rights of citizens to lawfully possess weapons" nor does it "train officers about the legal distinction between possessing weapons in one's home versus public areas." *Id.* ¶¶ 23, 24. Plaintiff also alleges the City "trains its officers it is always permissible to shoot a person with a weapon, even when the officer has been given a warning and the arrested citizen is non-threatening". *Id.* ¶ 28.[7] Plaintiff alleges the City knew the "obvious consequences of these

---

[7] While the Court seriously doubts the veracity of this claim, it reluctantly accepts this policy as true for purposes of the instant motion.

policies was that City of Austin Police officers would be placed in recurring situations" similar to those faced by Officer Whitted, "these policies made it highly predictable that the particular violations alleged here . . . would result," and yet with deliberate indifference to Schaefer's rights, failed to train its officers in these areas. *Id.* ¶¶ 41, 42.

While Plaintiff fails to allege sufficient instances of similar past conduct by City police tending to substantiate the claim they were subjectively aware of the risk of failing to train its police force,[8] the Court finds, taking Plaintiff's allegations as true, "the need for more or different training [was] obvious, the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *See Connor*, 209 F.3d at 796–97 (citing *City of Canton*, 489 U.S. at 390). Indeed, it is highly predictable failing to train officers regarding how to act with individuals legally entitled to carry firearms would result in the constitutional violation alleged here and this failure to train was a moving force behind Schaefer's death. Because these allegations refer to "the specific topic of the challenged policy or training inadequacy," *City of Galveston*, 800 F. Supp. 2d at 844, they provide the City with adequate notice of the claims against it. Accordingly, Defendants' motion to dismiss is DENIED as to these claims.

Finally, Plaintiff seeks recovery against the City for ratifying Officer Whitted's conduct by continuing to approve and condone his actions in their entirety. First Am. Compl. [#16] ¶ 39. While

---

[8] Plaintiff alleges "APD's treatment of citizen journalist Anthony Buehler and it's responses to these incidents[,] is evidence of the Austin Police Department's conscious indifference to the rights of law abiding citizens." First Am. Compl.[#16] ¶ 25. However, Plaintiff does not allege facts explaining how the police departments treatment of Buehler is sufficiently similar to its treatment of Schaefer so as to establish a pattern of the misconduct alleged here. Simply reciting the name of an individual who allegedly was the victim of unidentified unconstitutional conduct is insufficient.

a ratification claim is viable in the Fifth Circuit, it is not applicable in this case. In *Grandstaff v. City of Borger*, the Fifth Circuit considered a case in which several officers opened fire on a non-threatening, unarmed, innocent citizen as he exited his vehicle. 767 F.2d 161 (5th Cir. 1985). The court found that "because the officers received no reprimands or discharges from the city following such a *flagrant use of excessive force*, there must have been a preexisting disposition and policy of reckless disregard for life." *Barkley v. Dillard Dept. Stores, Inc.*, No. 07-20482, 2008 WL 1924178 (5th Cir. 2008) (citing *Grandstaff*, 767 F.2d at 171–72) (emphasis added). A ratification theory is only available in "the most extreme factual situations." *Davis v. Montgomery Cnty.*, No. H:07-505, 2009 WL 1226904, at *8 (S.D. Tex. Apr. 30, 2009) (citing cases).

Officer Whitted's alleged conduct is not sufficiently extreme to warrant recovery under this theory. Unlike the situation in *Grandstaff*, Plaintiff acknowledges Schaefer was armed when he exited his home and subsequently reached for his weapon after Officer Whitted grabbed his left arm. Although Officer Whitted's conduct may support a finding of constitutional liability, this does not nearly qualify as being among "the most extreme factual situations." Accordingly, Plaintiff's ratification theory of liability must fail and Defendants' motion to dismiss is GRANTED as to this cause of action.

## Conclusion

For the reasons described in this order, Plaintiff's excessive force and failure to train or supervise claims survive the pleading requirements set forth in Rule 12. Any further argument as to these contentions are best resolved on an evidentiary record by summary judgment or trial.

Consequently, the Court concludes Plaintiff's Fourth Amendment claim based on Officer Whitted's search has been abandoned. The Court also concludes Officer Whitted is entitled to

qualified immunity on Plaintiff's Second Amendment claim but Officer Whitted is not entitled to qualified immunity on Plaintiff's Fourth Amendment excessive force claims based either on the initial assault or on the subsequent shooting. Finally, the Court finds Plaintiff's claims against the City based on maintaining unconstitutional policies or practices and based on ratification are due to be dismissed for failure to state a claim, but Plaintiff's failure to train claims against the City survive Defendants' motion.

Accordingly,

IT IS ORDERED that the Defendants City of Austin and Officer Whitted's Rule 12(b)(6) Motion to Dismiss and Motion for Rule 7(a) Reply and Rule 12(e) More Definite Statement [#7] is GRANTED IN PART and DENIED IN PART, as described in this opinion;

IT IS FURTHER ORDERED that Defendants' Rule 12(b)(6) Motion to Dismiss [#17] is GRANTED IN PART and DENIED IN PART, as described in this opinion.

SIGNED this the 4th day of August 2015.

UNITED STATES DISTRICT JUDGE

-26-